IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CASE NO. 2:16-CR-431-WKW |
| | ) | |
| LEOPOLDO RAMOS, JR. | ) | |

**MEMORANDUM OPINION AND ORDER**

**I. INTRODUCTION**

On August 24, 2016, Alabama State Troopers caught Defendant Leopoldo Ramos, Jr., and his two co-defendants with ten kilograms of cocaine hidden in a white Ford F-150 pickup truck. (Doc. # 1, at 1, 3.) The search that led to the eventual drug bust proceeded from a traffic stop initiated after a simple lane violation. In the course of the stop, the officer obtained reasonable suspicion that the Defendant was trafficking drugs and eventually obtained consent to search the vehicle. Soon thereafter, officers found ten kilo-sized packages of cocaine in a secret compartment inside the truck.

Defendant Ramos subsequently was arrested, charged, and indicted for possession with intent to distribute and conspiracy to possess with intent to distribute cocaine hydrochloride, in violation of 21 U.S.C. §§ 841(a)(1) and 846. (Doc. # 32, at 1.) Now before the court is a Motion to Suppress, filed by Defendant Ramos, which asks the court to suppress "all tangible and testimonial evidence recovered as

a result of an unlawful stop and unreasonable detention." (Doc. # 46, at 1.) The Magistrate Judge, after holding an evidentiary hearing (Doc. # 57), recommended that the court deny the motion. (Doc. # 74.) Defendant filed written objections to the Recommendation, urging the court to discredit the linchpin testimony of the Government's key witness at the suppression hearing. (Doc. # 76.) For reasons set forth below, the objection is due to be overruled, and the Recommendation is therefore due to be adopted.

## II.  STANDARD OF REVIEW

The court reviews *de novo* a Magistrate Judge's recommendation to which objections have been filed. Fed. R. Crim. P. 59. Even so, a Magistrate Judge's credibility determinations are afforded an understandable amount of deference, such that it is manifest error for the District Court to reject such a determination "without first rehearing—live, not prerecorded—the disputed testimony." *United States v. Powell*, 628 F.3d 1254, 1257 (11th Cir. 2010). However, the requirement that the fact finder observe the witness is satisfied "by the district judge accepting the determination of the magistrate after reading the record." *Id.* (quoting *Louis v. Blackburn*, 630 F.2d 1105, 1110 (5th Cir. 1980)).

## III.  FACTS

The Magistrate Judge's Recommendation already lays out a perfectly adequate description of the facts of this case (Doc. # 74, at 2–8), and the court need

not rehash them. In the interest of judicial efficiency, the court will proceed to the arguments, highlighting relevant facts where appropriate.

## IV. DISCUSSION

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "Temporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a 'seizure' of 'persons' within the meaning of this provision." *Whren v. United States*, 517 U.S. 806, 809–10 (1996). Traffic stops must therefore be constitutionally reasonable. *Id.* at 810. "As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Id.* However, "[s]ubjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis." *Id.* at 813. Thus, a traffic stop that, viewed objectively, is supported by probable cause is not rendered invalid merely because it was used as a pretext to investigate an unrelated crime. *See id.*; *City of Indianapolis v. Edmond*, 531 U.S. 32, 45 (2000).

A stop becomes unlawful, however, "if it is prolonged beyond the time reasonably required to complete the mission of issuing a ticket for the violation." *Rodriguez v. United States*, 135 S. Ct. 1609, 1612 (2015) (quoting *Illinois v. Caballes*, 543 U.S. 405, 407 (2005)) (brackets and quotation marks omitted).

"Authority for the seizure thus ends when tasks tied to the traffic infraction are—or reasonably should have been—completed." *Id.* at 1614 (citations omitted). This means that officers "may conduct certain unrelated checks during an otherwise lawful traffic stop. But . . . [they] may not do so in a way that prolongs the stop, absent the reasonable suspicion ordinarily demanded to justify detaining an individual." *Id.* at 1615.

Mindful of the governing law, the court turns to Defendant's motion. The argument for suppression proceeds in two parts, either of which (if correct) would be sufficient to grant the motion. First, Defendant argues that Trooper Faulk, the officer who initiated the traffic stop, lacked probable cause that a traffic violation occurred. (Doc. # 46, at 3–6.) Second, he argues that, even if the initial stop was justified, Trooper Faulk did not obtain reasonable suspicion of criminal activity until after he kept Defendant and his passenger beyond the permissible duration of a traffic stop. (Doc. # 46, at 6–8.) Neither argument holds water.

A.  **Probable Cause for the Traffic Stop**

Defendant's first contention turns entirely on whether the court credits Trooper Faulk's testimony at the suppression hearing. The trooper testified that he pulled over Defendant Ramos after witnessing his vehicle cross over the striated line on the right side of the far right lane, resulting in a traffic violation for improper lane usage. (Doc. # 57, at 12–13.) If the testimony is true, there is no question that

4

probable cause existed for the traffic stop, and Defendant's argument fails. Thus, Defendant urges the court to find the officer's testimony incredible and, by implication, to hold the stop illegal. But there is no good reason to do so.

The only reason for which the court might discredit Trooper Faulk's testimony is the fact that a dash-cam video depicting the moment of the alleged traffic violation roughly from the perspective of the testifying officer fails to establish conclusively that Faulk witnessed what he alleges. The vehicles appear to be several hundred yards up the road, and Faulk's view of Defendant's vehicle is obstructed partially by a tractor-trailer. The video, if anything, is inconclusive. For this reason alone—and without offering any plausible reason for the court to believe that the truck, in fact, did not cross the fog line, or for which Trooper Faulk might lie—Defendant asks the court to declare the Government's witness a perjurer and invalidate the stop altogether.

Unfortunately for Defendant, the truck in the video was not a turnip truck, and the court did not just fall off of it. The fact that a piece of evidence does not confirm some proposition is not a reason *per se* to conclude the proposition's opposite, or even to doubt the proposition itself. By that logic, the court would be justified in finding probable cause lacking upon hearing an audio recording of the stop. But, importantly, neither does the video *disconfirm* anything about Trooper Faulk's testimony. The scene in the video in which the traffic violation unfolds admittedly

is fuzzy.  From this, Defendant would have the court deduce that Trooper Faulk could not possibly have seen what he claims to have seen.  However, a different conclusion is warranted.  In the court's view, any blurriness of the dash-cam picture is reason to distrust the video itself more than Faulk's testimony.  As an example, street signs captured by the dash-cam—which clearly are readable in person—are illegible from as little as ten or fifteen yards away in the video, and Trooper Faulk testified that the video makes the distance "look[] a lot further than what it actually is" (Doc. # 57, at 56).  Moreover, with the scene transpiring in the middle of the day and with no rain, fog, or other visual obstructions, an eyewitness is more reliable than a low-quality dash-cam.  In the absence of evidence tending to show Trooper Faulk's testimony untrustworthy, there is no reason to put more stock in the video than in his eyewitness account.

But the video, even though inconclusive, tends to corroborate Trooper Faulk's story.  Although it does not clearly show Defendant's truck crossing the white line, it does depict the driver to the left of Defendant swerve (which, according to Trooper Faulk, immediately preceded the traffic violation and occurred as a direct result of Defendant's attempted lane-change).  It also shows the brake lights of the tractor-trailer behind Defendant come on (which, according to Trooper Faulk, was another reaction to Defendant's attempted lane-change and overcorrection).  Plus, in the conversation captured on the video, Defendant does not deny the traffic violation

when Trooper Faulk mentions that he "rolled over the dotted line," nor does Defendant seem to take issue with Faulk's account when he says, "I was going to get over, but there was an 18-wheeler . . . ." Just as footprints in the snow tend to support the proposition that a person walked by, these details in the video tend to support Trooper Faulk's account that Defendant's vehicle attempted to switch lanes and overcorrected past the line. Granted, in both cases there might be a plausible alternative explanation. But it is reasonable to choose one explanation over others based on the account of a reliable eyewitness, especially one with over 15 years of experience in law enforcement who has made over 1000 traffic stops in similar circumstances.

Furthermore, as the Magistrate Judge observed (Doc. # 74, at 11), even if Trooper Faulk lacked probable cause for the initial traffic violation, he testified that he witnessed a second violation from a much closer, unobstructed vantage point. (Doc. 57, at 15.) This violation would give him an independently sufficient reason to stop Defendant Ramos. Although the video again does not clearly confirm or disconfirm this testimony, there is even less reason here than in the previous instance to doubt its reliability, given the lack of any countervailing evidence. Accordingly, the Magistrate Judge's finding that Trooper Faulk's testimony at the suppression hearing is credible is not clearly wrong. The Magistrate Judge correctly concluded that Trooper Faulk had probable cause to stop Defendant Ramos.

## B.     Reasonable Suspicion for the Extended Investigation

The second issue is more straightforward. Because the traffic stop was supported by probable cause, Trooper Faulk had a right to pursue inquiries unrelated to the traffic violation as long as those inquiries did not "measurably extend the duration of the stop." *Rodriguez*, 135 S. Ct. at 1615. A few questions asked while "checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance," for instance, are well within an officer's latitude. *Id.*

This is exactly what happened here. As the Magistrate Judge observed, "the evidence before the court shows that, during the course of conducting precisely the sort of inquiries recognized as ordinary and lawful in *Rodriguez*, Trooper Faulk observed several suspicious circumstances that, consistent with his training, caused him to believe criminal activity was afoot." (Doc. # 74, at 14.) All the information contributing to Faulk's suspicion[1] was obtained "within twelve minutes of the

---

[1] The Magistrate Judge's Recommendation provides a long, detailed list of exactly what contributed to Trooper Faulk's reasonable suspicion:

> a) he knew the truck had originated from or passed through an area known as a source for drug distribution and that, since it passed through the Customs checkpoint in Falfurrias, Texas, the previous day, it had traveled almost continuously along a known corridor for drug trafficking in the direction of a narcotics 'source' city; b) the appearance of rust, 'staged'-looking tools in the bed of the truck; c) the unusual nervousness and anxiety displayed by Defendant and Everett; d) the one-month insurance policy [taken out on Defendant's truck]; e) the inconsistent statements given by Defendant and Everett respecting where they had been and where Defendant had picked up Everett; f) Everett's initial response that she did not know where the two were going; and g) the fact that Defendant lied

8

beginning of the stop." (Doc. # 74, at 15.) Although the court is mindful that a stop's duration, divorced from other factors, cannot be the touchstone inquiry, it is impossible to argue here that the twelve minutes it took Trooper Faulk to obtain reasonable suspicion prolonged the stop "beyond the time reasonably required to complete th[e] mission" of issuing a traffic warning or citation. *See Rodriguez*, 135 S. Ct. at 1615. Accordingly, the court agrees with the Magistrate Judge that the stop was prolonged only after Trooper Faulk obtained reasonable suspicion that criminal activity was afoot.

## V.  CONCLUSION

Upon careful consideration of Defendant's Motion to Suppress (Doc. # 46), the Magistrate Judge's Recommendation (Doc. # 74), and Defendant's objections thereto, and after a thorough review of the record, it is ORDERED that the Recommendation is ADOPTED, Defendant's objections are overruled, and Defendant's Motion to Suppress is DENIED.

DONE this 3rd day of January, 2017.

                                                     /s/ W. Keith Watkins
                                    CHIEF UNITED STATES DISTRICT JUDGE

---

about the whereabouts of his own truck, saying that it was in Houston when Trooper Faulk knew that it was traveling with the vehicle driven by Defendant.

(Doc. # 74, at 14–15.) As the Magistrate Judge points out, courts have upheld reasonable suspicion findings in cases involving much less. (Doc. # 74, at 15–16.)